PEOPLES SAVINGS BANK, Appellee, v. W. R. PRETTYMAN et al., Appellants.

No. 39660.

December 13, 1929.

*Salinger, Reynolds & Meyers,* for appellants.

*Lee & Robb* and *L. Dee Mallonee,* for appellee.

Grimm, J.—This suit was begun on the 25th day of July, 1926. Plaintiff is a banking corporation at Templeton, Iowa. Myrtle I. Prettyman Ensey and Ansel G. Ensey are wife and husband. The defendant W. R. Prettyman, commonly and here-inafter known as ''Roy,'' and the said Mrs. Ensey, similarly known as ''Myrtle,'' are brother and sister, and the children of W. H. Prettyman.

On the 14th day of January, 1925, a judgment was rendered in the district court of Carroll County, Iowa, in favor of the plaintiff bank and against W. H. Prettyman, the father, Roy Prettyman, son, and one Zitzlsberger, for the sum of $4,286.71 and costs taxed at $103.87 upon a promissory note executed by Roy Prettyman and his father to Zitzlsberger, and by the latter indorsed to the plaintiff bank. An execution on the judgment, issued to the sheriff of Carroll County, was returned unsatisfied as to W. H. Prettyman and Zitzlsberger. An execution directed to the sheriff of Dallas County against Roy Prettyman was also returned unsatisfied.

It appears from the record that, on August 1, 1919, the father, W. H. Prettyman, deeded to his children, Roy and Myrtle, a certain tract of land in Audubon County, consisting of ap-proximately 257 acres, the consideration named being ''natural love and affection.'' Subsequently, and on July 14, 1924, Roy, ''in consideration of one thousand dollars and other valuable

consideration," deeded his undivided one-half interest in the said land to his sister Myrtle, "subject to two mortgages in the sum of $11,000.00 which grantee assumes and agrees to pay as part of the purchase price agreed to be paid." The plaintiff claims in the petition that the transfer of July 14, 1924, to Myrtle was to hinder, delay, and defraud the plaintiff of its indebtedness; that Roy Prettyman was insolvent at the time; and that the conveyance was grossly in excess of all consideration moving from Myrtle to Roy. The defendant Roy Prettyman filed a disclaimer. Myrtle and her husband admitted the formal allegations, and entered a general denial.

The indebtedness of $11,000 above referred to, assumed by Myrtle, consisted of one mortgage for $5,000 to the German Savings Bank at Davenport, Iowa, and one for $6,000 to the Connecticut General Life Insurance Company. The mortgage for $5,000 was made up of an item of $3,000 which had been a lien on the farm for a long time and an item of $2,000 which was borrowed by the father and given to the son Roy, in order that the son might go into business. The $6,000 mortgage was placed on the farm in order to raise funds to enable Roy to buy a farm in Carroll County. The evidence shows that the father managed both of these farms, and transacted the business as the agent of both the son and the daughter. Much of the record is rather indefinite and uncertain in reference to what moneys were collected by the father as the proceeds of the operation of the Audubon County farm and what proceeds were collected as the result of the operation of the Carroll County farm. It appears clearly in evidence, however, that the Carroll County farm was not profitable, and the proceeds of the Audubon County farm were used to some extent in paying interest, taxes, and other charges on the Carroll County farm. The transfer by the father to the children was made at a time when the father, then a widower, was contemplating remarriage. There is evidence in the record to the effect that it was the intention of all concerned that the children should share equally in the estate. The $3,000 mortgage on the Audubon County farm hereinbefore referred to was placed on the farm before the mother had passed away. There is nothing to show for what purpose this money was used. This appeal comes to us upon three principal items.

I. It is claimed that there was no substantial inadequacy

of the consideration that would constitute the transfer a voluntary conveyance, and for that reason the transfer by the brother to the sister should not be set aside. The plaintiffs introduced five witnesses who testified to the value of the land in controversy on July 14, 1924, and their estimates varied from $130 to $150 per acre, or an average of $147.50. The defendant's witness (one only was used) placed the value of the land at $110 an acre. According to the plaintiffs' testimony, the value of Roy's undivided interest in the farm on the day of the transfer to his sister was about $19,000. Upon any hypothesis of calculation, from the evidence in the record, this was many thousand dollars in excess of any consideration which flowed to Roy by reason of the transfer to Myrtle. Moreover, the record quite clearly shows, and the trial court found, that, at the time of this transfer by Roy to his sister, Roy was insolvent. The consideration named in the deed was $1,000 and other valuable consideration. It is admitted that Roy owed Myrtle $300 at the time, in the form of a definite item, and some other undetermined items growing out of the operation of the farms.

A careful analysis of the evidence convinces us that the trial court, in so far as this complaint of appellants' is concerned, correctly held. The court found that the sister assumed indebtedness on the Audubon County property and made payments from her funds in Roy's interest in a total sum of $9,500. Roy's interest in the land was much in excess of that amount. According to appellants' own valuation witness, Roy's interest was in excess of $14,000.

II. Appellants complain that, if the transfer is set aside, Myrtle should be credited with a lien of $12,057.09, which should be made prior to any indebtedness held by the bank, instead of $9,500, as fixed by the trial court. This claim of the appellants' involves an examination of the entire accounting made in the trial of the case. There are many items. To attempt to set them out would unnecessarily extend this opinion, and the discussion would be of no value to the bench or bar.

Suffice it to say, Myrtle was given credit for the $300 which Roy owed her on July 14, 1924, when the deed was recorded; also, $2,000 of the $5,000 mortgage to the German Savings Bank of Davenport, Iowa, this being the amount which was added to the old mortgage on the farm, in order to produce $2,000 as a

working capital for Roy's private business. Credit was also given for the $6,000 mortgage which was placed on the Audubon County farm, in order to enable Roy to buy the Carroll County land. She was also given credit for $500, being one half of an amount paid to the First National Bank of Coon Rapids, Iowa, to extinguish a debt of the father's in the form of a note indorsed by Roy; also, $200 on a similar transaction with the Carroll County State Bank. This made a total of $9,000. There is a detailed accounting of rents, interest and taxes in connection with the operation of the two farms, by which the court gives Myrtle credit for $500, making the total of the lien, $9,500, in favor of Myrtle.

Relative to the two items of $1,000 and $400 paid on the indebtedness of the father, the record contains substantial evidence to the effect that there was an agreement by all parties concerned, at the time these advancements were made, that the land should bear these payments; or, in other words, that each of the children should bear one half. Myrtle did not see fit to testify in the case. We are not disposed to disturb the trial court's findings on these items.

Prior to the time that the father deeded the Audubon County land to the children, Roy and Myrtle,—in fact, prior to the death of the mother of these two children,—there was on the Audubon County land a mortgage of $3,000, which has been herein previously mentioned. The record does not clearly show for what purpose this money was obtained, or what was done with it. It was a part of the $5,000 mortgage which, added to the $6,000 mortgage referred to, made up the indebtedness assumed by Myrtle when Roy deeded her his interest in the Audubon County farm. Had Roy and Myrtle continued to own the property, and had they cleared off the indebtedness on the land, each would have been required to pay, so far as the record shows, one half of this $3,000 mortgage. When Roy deeded his half interest to Myrtle, and she assumed to pay this $3,000, one half thereof was a part of the consideration passing from her to Roy for the said half interest in the land. Consequently, that amount, $1,500, which was not taken into account in arriving at the $9,500 lien placed on the land by the court, should be added thereto, increasing the lien from $9,500 to $11,000; and to that extent the finding of the

trial court is modified. The cause is remanded for a decree in accordance with this ruling.—*Modified and affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.